THE CHEMICAL NATIONAL BANK OF NEW YORK, Respondent, *v.* JETTE KOHNER et al., Administrators, etc., Appellants.

It is not essential that a compromise agreement should be in writing; each creditor may make a separate parol agreement for the purpose of carrying the compromise into effect, and after the agreement is once made no creditor can withdraw without the consent of the debtor.

K., defendant's intestate, being indebted to plaintiff and to two other banks, proposed a compromise, by paying or securing a percentage, which one or both of the other banks agreed to accept if plaintiff would. K. proposed to plaintiff's cashier to secure the specified percentage on its claim by a note with G. as indorser. The cashier thereupon, after consultation with plaintiff's president, and at the request of K.'s agent, wrote to one of the other banks, using paper with the bank heading and signing as cashier, to the effect that plaintiff proposed to take K.'s note, indorsed by G., for the percentage, and to discharge K. in full on payment thereof. Soon after writing, the cashier informed the president and they concluded not to compromise. When, therefore, the indorsed note was tendered the cashier refused to accept it and repudiated the agreement; before this was made known to K. he had settled with the other banks on the terms proposed, and had been discharged. It did not appear that he owed any other debts. K. afterward tendered a certified check for the amount of the compromise. The president and cashier were the active managers of plaintiff's bank. The compromise was not repudiated on the ground of want of authority of the cashier, and no proof was given that he acted without authority. Compromises were of common occurrence in said bank. In an action upon the original indebtedness, *held*, that the authority of the cashier to act was, under the circumstances, to be presumed ; that the agreement made was a valid composition agreement,

and after performance by the other creditors it was too late for plaintiff to recede.

*It seems* that had there been proof that the cashier exceeded his authority the question would have been different.

The note and certified check after tender and refusal were destroyed. *Held,* that plaintiff having refused to accept performance could not allege non-performance ; that the tender was sufficient to defeat a suit on the original indebtedness, and, after refusal plaintiff could only put K. in default by demanding the indorsed note as agreed, or the percentage in money.

*It seems* that had a suit been commenced on the composition agreement, a claim that the tender should have been kept good would have been a good answer to a defense based upon the tender.

Also *held,* that plaintiff was not entitled to recover the percentage of its claim so agreed upon, as the action was based solely upon the original indebtedness.

(Argued March 24, 1881 ; decided April 19, 1881.)

APPEAL from order of the General Term of the Court of Common Pleas in and for the city and county of New York, reversing a judgment in favor of defendants, entered upon the report of a referee. (Reported below, 8 Daly, 530.)

The nature of the action and the facts are sufficiently stated in the opinion.

*B. F. Watson* for appellants. . One of several creditors, who have agreed to the terms of the composition, cannot, by refusing to perform on his part, annul the composition or revive the original debt, so far as he is concerned. (*Renard* v. *Fuller,* 4 Bosw. 107 ; *Hall* v. *Merrill,* 5 id. 266 ; *Fellows* v. *Stevens,* 24 Wend. 294 ; *Heathcote* v. *Crookshank,* 2 T. R. 24.) Tender of the indorsed note to plaintiff, pursuant to the agreement, barred an action for the original indebtedness of Kohner. (*Lamb* v. *Lathrop,* 13 Wend. 95 ; *Fellows* v. *Stevens,* 24 id. 299 ; *Brooklyn Bk.* v. *De Graw,* 23id. 342 ; *Heastman* v. *Miller,* 35 Sup. Ct. 29 ; *Billings* v. *Vanderbeck,* 23 Barb. 554.) Upon the tender the title to the indorsed note passed to plaintiff, and as defendant's intestate, on the refusal to accept, did not abandon it to plaintiff, but kept it and took it away with him, he thereby became bailee of the note for the plaintiff. (2

Kent's Com. 508; *Yale* v. *Snyder*, 24 Wend. 273.) An accord unperformed consisting of mutual promises, and they having a new consideration, is binding upon the parties, and an action will lie for the breach of it. (2 Pars. on Cont. 95; 3 Barn. & Ad. 701; 1 Chitty's Pl. 296; Story on Contracts, § 982; Com. Dig., Accord. B. 1–4; *Billings* v. *Vanderbeck*, 23 Barb. 546.) When an officer does an act which is within the general scope of his powers, although circumstances may exist which, under the particular act, is a violation of his duty, the corporation is, nevertheless, bound by his act as to persons dealing in ignorance of those circumstances, and is responsible to innocent third parties, who have sustained damages occasioned by such act. (*Booth* v. *Farmers & Mechs.' N. Bk.*, 50 N. Y. 400; *Bk. of Vergennes* v. *Warren*, 7 Hill, 91; Angell & Ames on Corporations, citing *Payne* v. *Commercial Bk. of Natchez*, 6 Sm. & Marsh. [Miss.] 24; *Hoyt* v. *Thompson's Executor*, 19 N. Y. 207; *Farmers & Citizens' Bk.* v. *Sherman*, 6 Bosw. 181.) This is a plain case of *estoppel in pais*. (*Bowen* v. *Bowen*, 30 N. Y. 519, 541; *Continental Nat. Bk.* v. *Nat. Bk. of Commonwealth*, 50 id. 575; *Manuf. & Traders' Bk.* v. *Hazard*, 30 id. 226; *Blair* v. *Wait*, 69 id. 113; Morse on Banks and Banking, 143, 148, 160, 161, 177; *Eastman* v. *Coos Bank*, 1 N. H. 23; *Bridenbecker* v. *Lowell*, 32 Barb. 9; *Bk. of Penn.* v. *Reid*, 1 Watts & S. 101; *Booth* v. *Farmers & Mechanics' Nat. Bk.*, 50 N. Y. 397; *New Hope & Del. Bridge Co.* v. *Phœnix Bk.*, 3 Comst. 166; *Branch Bk.* v. *Steele*, 10 Ala. 915.)

*Charles Jones* for respondent. An agreement by way of accord executory, to be performed at a future day, is no bar to an action unless performance is executed. (*Heathcote* v. *Cruikshank*, 4 T. R. 24; *Tilton* v. *Olcott*, 16 Barb. 593; *Dobson* v. *Arnold*, 10 How. Pr. 528.) The tender proved in this case cannot be regarded as equivalent to performance. (*Brooklyn* v. *De Grau*, 23 Wend. 342; *Warling* v. *Wilcox*, 2 Hilt. 118; Graham's Pr. 541; 3 Chitty's Pl. 922–3 [Plea of tender]; *Roosevelt* v. *Bull's Head Bk.*, 45 Barb. 579; *Simpson* v. *French*, 25 How. Pr. 464; *Gale* v. *Suydam*, 24 Wend. 271.)

EARL, J.   This action was brought upon four promissory notes, amounting in the aggregate to over $15,000, made by Griffith and Prentiss and indorsed by Joseph Kohner, defendants' intestate.. The defendants set up as a defense a composition agreement.   The referee sustained the defense and ordered judgment for the defendants.   Upon appeal by the plaintiff to the General Term, that judgment was reversed upon the ground that the agreement was made by plaintiff's cashier, without its authority, and, therefore, was not binding upon it. It appears that beside the notes held by the plaintiff, the same parties were indebted upon notes held by the Central National Bank and the Bank of New York, and that Kohner was desirous of compromising his liability to the three banks by paying or securing twenty-five per cent of the indebtedness, and that one or both of the other banks agreed to accept the twenty-five per cent if the plaintiff would.   In November, 1873, the notes held by the several banks being all over due, Griffith, one of the makers, on behalf of Kohner, went to plaintiff's bank and opened a negotiation with its cashier to effect the compromise, and there proposed to such cashier to secure twenty-five per cent of the indebtedness due his bank upon the four notes in suit, by giving the note of Kohner for the amount, indorsed by one Goldsmith, payable in six months. The cashier consulted with the president, and had several interviews with Griffith upon the subject, and finally, at the request of Griffith, he addressed to the president of the Bank of New York, knowing that it was intended to induce him to enter into the compromise, the following letter:

"CHEMICAL NATIONAL BANK, NEW YORK,
*November* 14, 1873.

"JOHN Q. JONES, *President.*

"GEO. G. WILLIAMS, *Cashier.*

"C. P. LEVERICH, Esq.:

"DEAR SIR — At the request of Mr. Griffith, I beg to say that we propose to take the notes of Joseph Kohner, indorsed by J. A. Goldsmith, for twenty-five cents on the dollar of

his indebtedness to us and discharge him in full when the notes are paid, holding, of course, Griffith and P. for the balance. "Very respectfully,

"G. G. WILLIAMS, *Cashier*."

·Soon after the writing of this letter, Williams informed Jones, the president, of it, and they discussed the bearings of the proposed compromise upon a suit then pending against the bank, and the president then stated to the cashier that in reference to that suit the proposed compromise was not wise and that they had better not yet settle with Kohner, and thereafter, when the note of Kohner, indorsed by Goldsmith, was tendered, the cashier refused to accept it and repudiated the compromise. It appears that the president and cashier were the active managers of the bank; all these transactions took place in the bank of the plaintiff, and there was no evidence showing, or tending to show, that the cashier was not authorized to make the compromise, and the compromise was never, at any stage of the transactions, repudiated on the ground that the cashier entered into it without authority. The cashier and the president were both sworn for the plaintiff upon the trial, and they gave no evidence showing, or tending to show, that the cashier acted without authority in making the composition agreement. Under all the circumstances we think it must be presumed that he had such authority, either by usage known to the directors of the bank, or by some general by-law or resolution of the board of directors. (*Bank of Vergennes* v. *Warren*, 7 Hill, 91.) It was proved that compromises were matters of common occurrence in plaintiff's bank, and it cannot be presumed that this compromise, made by the cashier after consultation with the president, was made without authority, nor can it be presumed that in an ordinary matter of this kind the formal sanction of the board of directors was necessary. If the plaintiff had proved affirmatively that the cashier had transcended his authority, a different question would have been presented for our consideration. In *The Bank of Vergennes* v. *Warren*, it was held, that where the

cashier of a bank assigns a certificate of sale owned by it, affixing the corporate seal to the assignment, his authority to do so will be presumed until the contrary appears; and that the presumption of authority on the part of the cashier will not be overcome by evidence that the board of directors had passed no resolution on the subject.

We cannot see, therefore, that the referee erred in holding that this composition agreement was made by the bank.

It is scarcely disputed that the agreement made was a·valid composition agreement. Kohner was liable to the three banks, and it does not appear that he was otherwise indebted. He proposed to compromise all of these liabilities, and it was so understood by each of the banks. It was not necessary that the composition agreement should be in writing. If in writing, each bank could have executed a separate instrument. Being by parol, each bank could make a separate parol agreement for the purpose of carrying into effect the compromise. After the agreement was once made, neither party could withdraw from it without the consent of the debtor. Here, before Kohner knew that the plaintiff repudiated the compromise agreement, he paid the twenty-five per cent to the Central Bank, and gave his note, indorsed by Goldsmith, to the Bank of New York, and was discharged by those banks. After that, certainly, it was too late for the plaintiff to recede from its agreement. (*Fellows* v. *Stevens*, 24 Wend. 294; *Williams* v. *Carrington*, 1 Hilt. 515 ; *Smythe* v. *Graydon*, 29 How. Pr. 11 ; *Renard* v. *Tuller*, 4 Bosw. 107; *Hall* v. *Merrill*, 5 id. 266 ; *Horstman* v. *Miller*, 35 N. Y. Supr. C. 29 ; *Good* v. *Cheesman*, 2 Barn. & Adol. 328.; *Boyd* v. *Hind*, 40 Eng. L. and Eq. 428.)

The plaintiff claimed upon the trial, and gave evidence tending to show, that the next day after the writing of the letter above set out, it notified the president of the Bank of New York that it had repudiated the compromise agreement, and that it should not rely upon the letter; but the referee found that no such notification had been given. This case, therefore, must stand as if there had been no repudiation of

the compromise agreement until Kohner tendered performance thereof. There was, therefore, no error by the referee in holding that the plaintiff had entered into a valid compromise agreement.

But the claim is made, on the part of the bank, that the compromise agreement was not performed as to it, and hence that it had a right to sue upon the original indebtedness. Kohner in the first place, tendered to the bank a note indorsed by Goldsmith, as required by the agreement, and it refused to receive it. Kohner then tendered to the bank a certified check for the twenty-five per cent, and that was also refused, but not upon the ground that it was not money. Both refusals were upon the ground that there was an action pending against the plaintiff which might be affected by the compromise. Having thus repudiated the compromise, and refused to accept performance thereof, the plaintiff cannot now allege non-performance for the purpose of depriving defendants of their defense to this action. After such refusals, the plaintiff could put Kohner in default only by demanding of him the indorsed note, as agreed, or the twenty-five per cent in money. Such tender of performance was sufficient to defeat any suit upon the original indebtedness. (*Fellows* v. *Stevens*, *supra* ; *Reay* v. *White*, 1 Cromp. & M. 748.)

It appeared, however, that after the plaintiff had refused to accept the note and the certified check, Goldsmith destroyed them. Whether such destruction was before or after the commencement of this action does not appear. The learned counsel for the plaintiff now claims that the tender was unavailing, because it was not kept good. If a suit had been brought upon the composition agreement, a claim that the tender should have been kept good would probably have been a good answer to a defense based upon such tender, but the destruction of the note and check did not destroy the composition agreement. That remained in force until Kohner was in some way put in default. Until such default no action could be maintained upon the original indebtedness. The composition agree-

ment and tender of performance thereof, on the part of Kohner, is a defense to such action.

The further claim is made, on the part of the plaintiff, that it should have recovered in this action, at least, the twenty-five per cent of its claims. After the composition agreement was made, and so long as it remained in force, it was a substitution for and took the place of the original indebtedness, and the only claim plaintiff thereafter had against Kohner was upon the composition agreement. It had no cause of action upon the original indebtedness, and it could, therefore, recover nothing in this action, which was based solely upon that indebtedness.

We are, therefore, of opinion that the learned General Term erred and that its order should be reversed, and the judgment entered upon the report of the referee affirmed, with costs.

All concur.

Order reversed and judgment affirmed.